IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| LEO PHARMA A/S, LEO LABORATORIES LIMITED, and LEO PHARMA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>ACTAVIS LABORATORIES UT, INC.,<br><br>Defendant. | ) | C.A. No. 16-333 (JFB) (SRF)<br>C.A. No. 17-1752 (JFB) (SRF) |
| LEO PHARMA A/S, LEO LABORATORIES LIMITED, and LEO PHARMA, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>PERRIGO UK FINCO LIMITED PARTNERSHIP and PERRIGO COMPANY,<br><br>Defendants. | ) | C.A. No. 16-430 (JFB) (SRF)<br>C.A. No. 17-1753 (JFB) (SRF) |

**JOINT STATUS REPORT**

## I. INTRODUCTION

Plaintiffs LEO Pharma A/S, LEO Laboratories Limited, and LEO Pharma, Inc. (collectively, "Plaintiffs" or "LEO") and Defendants Perrigo UK Finco Limited Partnership and Perrigo Company (collectively, "Perrigo") and Actavis Laboratories UT, Inc. ("Actavis") (collectively with Perrigo, "Defendants") submit the following status report pursuant to the Court's February 22, 2018 Order in these matters (the "Litigation").

## II. BACKGROUND

This Litigation involves four related patent infringement cases arising under the Hatch-Waxman Act.[1] Pursuant to the Court's Scheduling Order,[2] the fact discovery phase of the Litigation concluded on February 21, 2018. One deposition remains to be taken out of time, on March 2, 2018, *see* D.I. 242, and LEO is in the process of completing post-November 2009 discovery to Perrigo, which Perrigo believes should include deposition testimony. The parties are attempting to agree on a stipulation of authenticity and business record status with respect to a number of documents which one or more parties contend are relevant. To the extent the parties are unable to reach agreement, each party has reserved the right to take additional depositions to establish the authenticity and business record status of the documents that are the subject of the proposed stipulations.

Expert reports on issues for which the parties bear the burden of proof are due on April 16, 2018. Rebuttal reports are due on May 16, 2018, reply reports on June 15, 2016, and expert discovery is to be completed by July 27, 2018. The Litigation is scheduled for a 7-day bench trial commencing on October 9, 2018.

On December 28, 2017, the Court issued a Report and Recommendation on Claim Construction (the "R&R"). The parties have filed Objections pertaining to terms in U.S. Patent Nos. 7,410,656 (the "'656 Patent") and 8,278,292 (the "'292 Patent"). D.I. 215, 217, 235 & 236. The parties' Objections, and request for oral argument, are pending before Judge Bataillon.

---

[1] All docket citations are to the docket in C.A. No. 16-333 unless otherwise noted.

[2] The "Scheduling Order" refers to the Court's Scheduling Order of October 13, 2016 (D.I. 20), as amended by the Court's Orders dated November 21, 2017 (*see* D.I. 181), December 20, 2017 (D.I. 201), and January 30, 2018 (*see* D.I. 242). All four cases are coordinated under a common schedule. D.I. 203.

Claim construction is ongoing for the New Brown Patents.[3] D.I. 249–252. The parties filed opening briefs on February 16, 2018. *Id*. Responsive briefs are due on March 9, 2018. *See* D.I. 242. Oral argument is scheduled for April 16, 2018. D.I. 201.

## III. OUTSTANDING DISPUTES

### A. LEO's Motion to Dismiss Actavis's Counterclaims

LEO's Motion to Dismiss Defendant Actavis's Counterclaim of Inequitable Conduct is pending. Briefing was completed in August 2017. *See* D.I. 104, 121, & 131. The Court heard oral argument on October 23, 2017.

### B. Perrigo's Motion for Leave to Amend Its Counterclaims

Perrigo's Motion for Leave to Amend its Counterclaims is pending. Briefing was completed in February 2018. *See* 16-430; D.I. 178, 179, 199, 201. The Court has denied Perrigo's request for oral argument.

### C. February 28, 2018 Discovery Dispute Hearing

LEO and Actavis have raised discovery disputes to be heard on February 28, 2018. *See* D.I. 256, 257, 259 and 260.

## IV. ADDITIONAL ITEMS

The parties wish to discuss a timeline for streamlining the issues in the case in the Litigation in advance of the 7-day trial scheduled to begin October 9, 2018.

#### 1. LEO's Position

LEO believes the parties should work to reduce the number of claims, alleged prior art references, and invalidity contentions. To that end, in early January, LEO made a substantial

[3] U.S. Patent Nos. 9,820,959, 9,833,428, and 9,833,429

reduction in the number of asserted claims, reduced the number of claims asserted against each Defendant by approximately 30%.[4]

Given LEO's reduction in the number of asserted claims, LEO has proposed that the Defendants (1) stipulate to infringement of the numerous claims for which they have not asserted any non-infringement position, and (2) reduce the number of invalidity contentions consistent with LEO's reduction in the number of asserted claims. Defendants, to date, have declined to stipulate to infringement of any claim, despite not disclosing noninfringement contentions for numerous asserted claims, including many in the Process Patents and New Brown Patents. Indeed, Defendants have not identified any noninfringement positions for any claim in the New Brown Patents.[5] Defendants have declined to reduce their invalidity contentions, and instead have broadened their invalidity contentions in their recently filed final contentions. Defendants have substantially increased both the number of alleged prior art references they assert and the number of combinations of references they allege would render the claims obvious, and the number of additional arguments invalidity arguments under § 112. In some instances, the

[4] This reduction does not count the additional removal of claims from the six withdrawn Brown Patents, (U.S. Patent Nos. 8,372,827, 8,372,828, 8,377,919, 8,536,163, 8,716,271, and 8,735,375), and it further bears note that when Plaintiffs asserted the New Brown Patents (U.S. Patent Nos. 9,820,959, 9,833,428, and 9,833,429) they asserted only a selected subset of claims from each patent. Indeed, had the six withdrawn Brown Patent been included in these calculations, LEO's reduction in the number of asserted claims would exceed 55%.

[5] LEO provided infringement contentions on the New Brown Patents in December 2017. Early in the case, LEO served an interrogatory seeking Defendants' non-infringement positions on the asserted patents. (Interrogatory No. 4). Although Actavis stated its expectation that *LEO* would provide contentions directed to the New Brown Patents in response to Defendants' previously served discovery (which LEO did), *see* Ex. 1, Feb. 17-24 emails, Actavis has now taken the position that *Actavis* does not have to respond to LEO's previously served discovery, including Interrogatory 4, concerning non-infringement contentions. *Id.* If Actavis or Perrigo later seek to present new non-infringement positions as to the New Brown Patents, LEO may seek to strike such untimely assertions.

Defendants assert combinations of up to 18 references, and more than 60 combinations of references, for a single asserted claim.[6]

Although LEO already reduced the number of asserted claims substantially in early January, Defendants have stated that they will not reduce their alleged prior art references or other invalidity contentions until after LEO again reduces the number of asserted claims. Even then, Defendants have stated that only after more reductions by LEO, will they *consider* making any reductions of their own.

It is a standard practice in this District to require defendants to reduce the number of invalidity contentions where, as here, plaintiffs have reduced the number of asserted claims. *See, e.g.*, *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 282 (D. Del. 2013); *Omeros Corp. v. Par Sterile Prods., LLC*, C.A. No. 15-773-RGA, D.I. 164 at 1 (D. Del. June 1, 2017); *Sound View Innovations, Inc. v. Facebook Inc.*, C.A. No. 16-116-RGA, D.I. 45 at 1–2 (D. Del. Aug. 26, 2016); *Broadsoft, Inc. v. Callwave Comms. LLC*¸ C.A. No. 13-711-RGA, D.I. 219 at 1–2 (D. Del. Sept 8, 2015); *GreatBatch v. AVX Corp*., C.A. No. 13-723-LPS, D.I. 368 at 1-2 (D. Del. July 28, 2015); *see also Nice Sys., Inc. v. Witness Sys., Inc*., 528 F. Supp. 2d 470, 490 (D. Del. 2007). LEO has already taken steps to streamline the litigation by reducing the number of asserted claims. It is time for Defendants to participate in simplifying this litigation. Defendants should stipulate to infringement of claims for which they have advanced no non-infringement position, and they should reduce the number of invalidity contentions.

LEO would be prejudiced if it were required to further reduce its claim set at this point. First, claim construction is outstanding on all but two asserted patents. Objections are pending on

[6] Actavis has also argued that it has no obligation to reduce the number of defenses under § 112 because that reduction would deprive it of "viable defenses." If that is their view, nothing will ever be reduced.

the ’292 and ’656 Patents, and claim construction is pending on the New Brown Patents. LEO needs to know how those terms will be construed before further reducing the number of claims. Second, Defendants’ proposed products and processes differ. The claims against each defendant therefore involve different issues, and LEO should not be limited to the same arbitrary number of infringement claims against both Defendants. Third, Defendants have suggested that they may contest infringement of some claims without providing any factual basis for doing so, thus providing LEO no notice of issues that may be presented as to some claims. Fourth, there has been no expert discovery in the case.

Defendants have not identified any cases that would support their position, especially given the outstanding claim construction proceedings and their unwillingness to stipulate to infringement of claims as to which they have identified no basis for contesting infringement. For example, Defendants cite *Omeros Corp. v. Par Sterile Prods., LLC*, C.A. No. 15-773-RGA, D.I. 168 at 1 (D. Del. June 6, 2017). But in that case, the Court issued an order limiting the number of asserted claims a month before trial, after claim construction and expert discovery had both been completed, and where the defendant had stipulated to infringement of all asserted claims; moreover, the Court issued the order after ordering the defendant to reduce its asserted obviousness combinations to no more than three per claim. *See Omeros*, C.A. No. 15-773-RGA, D.I. 169 at 1, D.I. 164 at 1. In *GreatBatch v. AVX Corp.*, C.A. No. 13-723-LPS, D.I. 368 at 1-2 (D. Del. July 28, 2015), the Court ordered the plaintiff to reduce the number of asserted claims (C.A. No. 13-723, D.I. 368) four months after the claim construction order issued (D.I. 283), and after all expert reports had been served (*see* D.I. 285 at 2). Neither *Omeros* nor *GreatBatch* support limiting the number of claims where, as here, claim construction is ongoing, no expert reports have been served, Defendants have not stipulated to infringement, and trial is more than

seven months away. The Federal Circuit's decision in *In re Katz Interactive Call Processing Patent Litigation* is also inapposite, addressing only whether a district court's process for requiring a patent owner to narrow the number of asserted claims violated the patent owner's due process rights. *See* 639 F.3d 1303, 1311–13 (Fed. Cir. 2011). Finally, the Federal Circuit Advisory Council "Model Order Limiting Excess Claims," upon which Defendants rely, was never adopted (or even endorsed) by the Federal Circuit.[7]

The only case Defendants have identified in which a plaintiff was required to limit the number of asserted claims prior to the completion of claim construction and expert discovery arose under circumstances starkly different from those here. *See Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 280–87 (D. Del. 2013). In *Masimo*, the plaintiff had previously litigated a patent infringement suit against the same defendant on patents in the same family as five of the seven asserted patents, the plaintiff was asserting 95 claims, and "no initial reduction of asserted claims had occurred." *Id*. at 282–83, 286. The Court observed that in the earlier case, claim construction and expert discovery had already been completed on the related patents, the parties' objections to claim construction had been ruled upon, and summary judgment had been fully briefed. *Id*. at 282–83. Given that and the number of claims, "the genealogy of the asserted patents and the relationship among them, the previous claim construction decisions, and the filed summary judgment motions," taken together, the Court determined that it was appropriate to order the plaintiff to reduce the number of asserted claims. *Id*. at 284. Once the plaintiff had done so, the court ordered the defendant to reduce the number

[7] *See* http://www.cafc.uscourts.gov/sites/default/files/ model_orders.pdf ("Model orders concerning e-discovery and limitations on claims and prior art were posted on the court's website. Those orders have now been removed since the court has not sponsored or endorsed the orders. In light of the court's determination, the advisory council should not be viewed as having sponsored or endorsed these orders on behalf of the court.").

of alleged prior art references from 135 to 40. *Id.* at 286. Here, LEO is asserting far fewer claims against Defendants than were at issue in *Masimo*, claim construction has not been fully resolved for most asserted patents, the parties and the Court do not have the benefit of expert discovery for any asserted or related patent, and LEO has already reduced the number of asserted claims. *Compare id*. at 286.

LEO having made a substantial reduction in the number of asserted claims, and fact discovery having closed, Defendants should (1) stipulate to infringement of claims as to which they have identified no basis for asserting noninfringement and (2) make an initial reduction in their invalidity contentions commensurate with LEO's reduction of the number of asserted claims in early January. After claim construction has been resolved, and expert discovery completed, LEO proposes that the parties discuss further reducing the number of asserted claims and the number of asserted invalidity theories, including 112 theories, the number of alleged prior art references and alleged combinations of prior art.

**2. Defendants' Position**

Throughout this litigation, the parties have undergone extensive and costly fact discovery on an excessive number of asserted claims. At the outset of the case, Plaintiffs alleged 58 claims against Actavis among the Aylward '656 patent and Brown patents, and 88 claims against Perrigo among the Aylward and Brown patents. Plaintiffs then added the Process Patents to the case, asserting an additional 37 claims against Actavis and 36 claims against Perrigo (not counting claims asserted in connection with the '356 patent, which was subsequently withdrawn). Only after discovery revealed that Plaintiffs did not have a basis to proceed with respect to six of the seven Brown patents then at issue did Plaintiffs withdraw the 39 claims (as to Actavis) and 58 claims (as to Perrigo) associated with those patents; however, Plaintiffs filed a new complaint asserting three new Brown patents, and asserted 24 new claims of those patents

against Actavis and 28 new claims against Perrigo. Not until January 4, 2018, did Plaintiffs send an email stating they were willing to reduce the number of asserted claims to 49 (as to Actavis) and 69 (as to Perrigo)—only nominally less than were originally asserted. The number of claims in this case continues to be unwieldy, and Plaintiffs cannot reasonably proceed to trial on all of these claims, given, *inter alia*, the limited amount of time allotted for trial of two separate defendants. As a result, Defendants have spent significant resources searching for, analyzing, and collecting evidence of invalidity for claims that cannot manageably be asserted at trial. It would be a waste of the Court's and the parties' time and resources to proceed with expert reports for such a vast number of claims.

Accordingly, as part of preparation of the case for expert discovery and trial, Defendants respectfully request the Court to require Plaintiffs to further limit the number of asserted claims under its "inherent authority . . . to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Masimo Corp. v. Philips Elecs. N. Am. Corp.*, 918 F. Supp. 2d 277, 282 (D. Del. 2013); *see also In re Katz Interactive Call Processing Patent Litig.*, 639 F.3d 1303, 1313 (Fed. Cir. 2011) ("In complex cases, . . . the district court 'needs to have broad discretion to administer the proceeding.'"). This Court regularly exercises such power. *See, e.g.*, *Masimo*, 918 F. Supp. 2d at 282, 284 (limiting to 30 asserted claims across 7 patents); *Omeros Corp. v. Par Sterile Prods., LLC*, C.A. No. 15-773-RGA, D.I. 168 at 1 (D. Del. June 6, 2017) (Ex. 2) (limiting to 2 asserted claims per patent or 10 total claims across 5 patents); *GreatBatch v. AVX Corp.*, C.A. No. 13-723-LPS, D.I. 368 at 1-2 (D. Del. July 28, 2015) (Ex. 3) (limiting to 15 asserted claims by summary judgment).

Defendants propose that Plaintiffs limit the number of asserted claims to: (i) twenty (20) claims by March 7, 2018 (two weeks after the upcoming status conference); and (ii) ten (10)

claims by July 27, 2018 (the close of expert discovery). The proposed reduction would not prejudice Plaintiffs, as the remaining asserted patents share overlapping subject matter of ingenol mebutate formulations and related methods of manufacturing. *See Masimo*, 918 F. Supp. 2d at 279, 283-284. If Plaintiffs believe these limitations are insufficient, they should bear the burden of demonstrating why. *See, e.g.*, *Katz*, 639 F.3d at 1311; *Stamps.com Inc. v. Endicia, Inc.*, 437 F. App'x 897, 902 (Fed. Cir. 2011). Plaintiffs' general argument that they are prejudiced because claim construction is still ongoing is unavailing, as courts commonly require reduction of claims to fewer than those currently asserted by Plaintiffs *before* claim construction. *See, e.g.*, Federal Circuit Advisory Council, A Model Order Limiting Excess Claims and Prior Art ¶ 2 (2013) (Ex. 4); United States District Court for the Eastern District of Texas, [Model] Order Focusing Patent Claims and Prior Art to Reduce Costs ¶ 2 (Ex. 5). Nor does Plaintiffs' grievance that Defendants have failed to stipulate to infringement of a number of asserted claims[8] obviate the need for Plaintiffs to reduce asserted claims to a more manageable number *before* expert discovery.

As part of narrowing the case, Defendants of course are amenable to limiting the number of asserted prior art references. Plaintiffs have proposed limiting Defendants' prior art references to three combinations per asserted claim, which Defendants are agreeable to—*after* Plaintiffs

[8] Actavis did not provide noninfringement contentions for the New Brown Patents in response to Interrogatory No. 4 because Plaintiffs defined "Asserted Claims" to mean "the claims identified by LEO in its Initial Infringement Charts as to Actavis," and those charts did not include the New Brown Patents. On the other hand, in Defendants' interrogatories, Defendants defined "Patents-in-Suit" to mean the asserted patents existing at the time, "*and others that may be asserted later in this action*." Thus, unlike Actavis, Plaintiffs were obligated to supplement their interrogatory responses with respect to the later-asserted New Brown Patents. Any attempt by Plaintiffs to "strike" Defendants' contentions on issues that Plaintiffs' discovery requests did not call for, and on which Plaintiffs bear the burden of proof, would be meritless. Perrigo does not believe issues relating to the disclosures in its discovery requests are ripe for the Court's adjudication, and do not believe Plaintiffs presently raise any such issues. Nonetheless, Perrigo reserves all rights regarding any issues Plaintiffs may bring, including as to any arguments that Plaintiffs believe Perrigo's contentions or discovery responses are lacking in any respect.

make their further reduction, and provided that additional references may be used to show, *inter alia*, the state of the art, the motivation to combine, the reasonable expectation of success, to address alleged secondary considerations, etc. Defendants propose to reduce their asserted prior art combinations within two weeks of Plaintiffs making their further reduction (not seven days, as Plaintiffs have previously proposed). Moreover, while Plaintiffs have requested that Defendants limit their asserted defenses under 35 U.S.C. § 112, Plaintiffs have provided Defendants with no authority to support the proposition that Section 112 defenses (unlike prior art references) must be narrowed. Indeed, Defendants believe that many of their Section 112 defenses, corresponding to certain dependent claims, will likely be rendered unnecessary once Plaintiffs further limit the asserted claims.

For at least these reasons, Defendants request that the Court implement Defendants' proposed schedule for limiting the number of asserted claims.

**B. Defendants' Proposed Motion to Dismiss**

**1. Defendants' Position**

Since the outset of this case, Plaintiffs have alleged that LEO Laboratories, Ltd. ("LEO Labs") is the owner of all of the patents-in-suit, including the Brown Patents. (C.A. No. 16-333, D.I. 1, ¶ 25; C.A. No. 16-430, D.I. 1, ¶ 31.) In addition, despite the fact that Plaintiffs' new complaints asserting infringement of the New Brown Patents contain no allegations relating to ownership (*see generally* C.A. No. 17-1752, D.I. 1; C.A. No. 17-1753, D.I. 1), Plaintiffs have taken the position that LEO Labs is also the owner of the New Brown Patents.

Plaintiffs' basis for alleging ownership of the Brown Patents and New Brown Patents has shifted over the course of the litigation.

Initially, Plaintiffs relied on assignments recorded with the U.S. Patent and Trademark Office purporting to show a transfer of title from the inventors of the Brown Patents and New

Brown Patents (through a series of entities) to LEO Labs. When they pointed to these assignments, Plaintiffs represented to Defendants that they had *no other information* regarding ownership.

Nonetheless, during discovery, Plaintiffs produced a number of documents appearing to contradict the assignments recorded in the Patent Office. Indeed, the documents produced by Plaintiffs made clear that there was a substantial question of LEO's ownership of the Brown and New Brown Patents because there was a break in the chain of title from the entity that originally owned the intellectual property that is reflected in the Brown Patents and New Brown Patents to LEO Labs. After the Court allowed Defendants to serve an interrogatory[9] directed specifically at discovering LEO Lab's basis for its ownership of the Brown Patents and New Brown Patents, Plaintiffs responded with several new alternative bases for LEO's ownership.

Each alternative purported to establish a chain of title to either LEO Labs or LEO Pharma A/S ("LEO Pharma") and relied on a set of completely different documents than the assignment records Plaintiffs had originally relied on to establish ownership of the Brown Patents. None of the alternative bases for ownership, however, established a clear chain of title to LEO Labs. Indeed, the opposite was true. Plaintiffs' interrogatory response, as well as the documents relied on in the response, made it even more evident that LEO Labs does not have clear title to the Brown Patents and New Brown Patents.

Notably, on the last day of discovery, Plaintiffs supplemented their interrogatory response to identify additional documents that Plaintiffs claimed further support LEO Labs

[9] The Court permitted Defendants to serve this interrogatory after Defendants moved to compel additional 30(b)(6) testimony regarding LEO Lab's ownership of the Brown Patents. Defendants had moved to compel because Plaintiffs' designated 30(b)(6) witness was unprepared to testify about the documents Plaintiffs had produced relating to prior ownership and transfer of the intellectual property that resulted in the Brown Patents.

ownership of the Brown Patents and New Brown Patents. These documents—like the documents Plaintiffs had previously cited—do not cure the deficiencies in the chain of title to LEO. In addition, Plaintiffs supplemented their Rule 26(a) Initial Disclosures to identify (for the first time) a person with knowledge of Plaintiffs' corporate structure and intra-company agreements—notwithstanding the lack of knowledge that LEO's 30(b)(6) designee professed to have at his deposition about these topics. Defendants can only assume that Plaintiffs will call this person at trial to provide evidence of LEO Labs' ownership of the Brown Patents and New Brown Patents.[10]

Nevertheless, Defendants believe that the discovery Plaintiffs have provided to date, including Plaintiffs' Interrogatory Response, and the documents cited therein, are insufficient to establish Plaintiffs' ownership of the Brown Patents or New Brown Patents. Patent ownership is essential to a plaintiff's standing to sue, which is a threshold, constitutional requirement under Article III. *Abraxis Bioscience, Inc. v. Navinta LLC*, 625 F.3d 1359, 1363 (Fed. Cir. 2010) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)), *reh'g en banc denied*, 672 F.3d 1359 (Fed. Cir. 2011). Moreover, it is Plaintiffs' burden to demonstrate standing to sue (not Defendants' burden to demonstrate lack of standing). *See Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012). Based on the discovery Plaintiffs have provided, Plaintiffs do not appear to be able to meet this burden.

---

[10] Given the lack of knowledge professed by Plaintiffs' 30(b)(6) witness on ownership of the Brown Patents, Plaintiffs should be precluded from suddenly eliciting such knowledge from a previously undisclosed individual, in contravention of Plaintiffs' 30(b)(6) testimony. At the very least, Defendants should be afforded a deposition of said individual in his personal capacity, as well as another 30(b)(6) deposition of Plaintiffs relating to the facts of alleged ownership on which Plaintiffs rely in their interrogatory response.

Accordingly, Defendants intend to move to dismiss the counts involving the Brown Patents and New Brown Patents (including the complaints in C.A. Nos. 17-1752 and 17-1753 in their entirety).

**2. LEO's Position**

LEO believes that there is no merit to Defendants' assertion, made for the first time last week, that Plaintiffs do not own the asserted Brown Patents, and reserves its right to respond fully in briefing. LEO notes that it is undisputed that the Brown Patents are owned by a subsidiary of Plaintiff LEO Pharma A/S.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Maryellen Noreika*

Jack B. Blumenfeld (#1014)
Maryellen Noreika (#3208)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@mnat.com
mnoreika@mnat.com

*Attorneys for Plaintiffs LEO Pharma A/S, LEO Laboratories Limited and LEO Pharma, Inc.*

RICHARDS, LAYTON & FINGER, P.A.

*/s/ Steven J. Fineman*

Steven J. Fineman (#4025)
Nicole K. Pedi (#6236)
920 North King Street
Wilmington, DE 19801
(302) 651-7700
fineman@rlf.com
pedi@rlf.com

*Attorneys for Perrigo UK Finco Limited Partnership and Perrigo Company*

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Robert M. Vrana*

Melanie K. Sharp (#2501)
James L. Higgins (#5021)
Robert M. Vrana (#5666)
Rodney Square
1000 North King Street
Wilmington, DE 19801
(302) 571-6681
msharp@ycst.com

*Attorneys for Actavis Laboratories UT, Inc.*