# Morris, Nichols, Arsht & Tunnell LLP

1201 North Market Street
P.O. Box 1347
Wilmington, Delaware 19899-1347

(302) 658-9200

**Maryellen Noreika**
(302) 351-9278
mnoreika@mnat.com

March 8, 2018

The Honorable Sherry R. Fallon                                                     *VIA ELECTRONIC FILING*
United States District Court
  for the District of Delaware
844 North King Street
Wilmington, DE 19801

Re:    *LEO Pharma et al. v. Actavis,* C.A. Nos. 16-333 & 17-1752 (JFB) (SRF);
        *LEO Pharma et al. v. Perrigo*, C.A. Nos. 16-430 & 17-1753 (JFB) (SRF)

Dear Judge Fallon:

    We write on behalf of LEO[1] in response to the Court's February 28, 2018 orders regarding narrowing the case and the location of the trial.

**Narrowing the Issues in the Case**

    LEO remains willing to narrow the issues in the case but, as explained during the February 28, 2018 hearing, maintains that Defendants Actavis[2] and Perrigo[3] must commit to a substantial narrowing of their own claims and defenses, which they have yet to do.

    By way of background, as of early December 2017, LEO had asserted patent infringement claims arising out of three patent families: the Aylward Patents,[4] the Original Brown Patents[5], and the Process Patents.[6] At that time, LEO had identified 124 claims asserted against Perrigo and 94 claims against Actavis. The New Brown Patents,[7] which share the same specification as the Original Brown Patents, issued in the fall of 2017, and in mid-December 2017, the parties reached an agreement to consolidate the New Brown Patents into the litigation

---

[1]    Plaintiffs LEO Pharma A/S, LEO Laboratories Limited, and LEO Pharma, Inc.

[2]    Defendant Actavis Laboratories UT, Inc.

[3]    Defendants Perrigo UK Finco Limited Partnership and Perrigo Company.

[4]    U.S. Patent Nos. 6,787,161, 6,844,013, 6,432,452, and 7,410,656.

[5]    U.S. Patent Nos. 8,278,292, 8,372,827, 8,372,828, 8,377,919, 8,536,163, 8,716,271, and 8,735,375.

[6]    U.S. Patent Nos. 9,416,084 and 9,676,698.

[7]    U.S. Patent Nos. 9,820,959, 9,833,428, and 9,833,429.

The Honorable Sherry Fallon
March 8, 2018
Page 2

while removing six of the seven the Original Brown Patents. Only U.S. Patent No. 8,278,292 ("the '292 Patent") remains in the litigation.

If both the Original and New Brown Patents had remained in the case, over 150 claims would have remained asserted against Perrigo and over 100 against Actavis. In light of the schedule for litigation of the New Brown Patents, LEO elected to assert only a subset of claims within the New Brown Patents; and not all of the claims that the Defendants infringe. The substitution of the three New Brown Patents in place of the six removed Original Brown Patents *reduced* the number of claims asserted against Perrigo by 31 and against Actavis by 24.

LEO then voluntarily further reduced its asserted claims in early January 2018, in advance of final infringement and invalidity contentions, bringing the number of claims asserted against Perrigo to 69 (a 27% reduction) and against Actavis to 49 (a 30% reduction)—and this without taking into account LEO's election not to assert several viable claims within the New Brown Patents.

The Defendants, by contrast, have increased the number of their invalidity contentions and asserted references. Each Defendant has provided its own invalidity contentions, which, combined, run well over 1,000 pages.[8] For each claim, each Defendant asserts numerous arguments under 35 U.S.C. § 112. Actavis, for example, has drastically increased the number of asserted references over the course of the litigation; it initially identified about 48 references allegedly relevant to the Aylward, Original Brown, and Process Patents, but has now identified about 74 references allegedly relevant to the Aylward, New Brown (and '292) and Process Patents.[9] Moreover, it appears that Actavis asserts (between its narrative and its charts) combinations of up to 18 references and more than 60 combinations of references for a single asserted claim. Perrigo similarly asserts (between the possible combinations outlined in its charts and narrative) more than 60 combinations of references for a single asserted claim.

It was against this backdrop LEO makes the following two-phase case narrowing proposal, in response to the Court's order:

*First*, as LEO emphasized in the parties' joint submission in advance of the February 28 teleconference, it is a standard practice in this District to require defendants to reduce the number of their invalidity contentions when, as in this case, the plaintiffs have reduced the number of asserted claims. *See* C.A. No. 16-333, D.I. 265 at 5 (collecting authority); *see also, e.g.*, Ex. 1, *Thermo Fisher Scientific Inc. v. Agilent Techs.*, C.A. No. 17-600-LPS-CJB (D. Del. Feb. 5, 2018) (Oral Order) (ordering the defendant to reduce its asserted references and combinations after the plaintiff's reduced the number of its asserted claims to 40 in a three-patent case).

---

[8] Given the size of these documents, we have not appended these contentions as exhibits; however, we would be pleased to provide the Court with a copy if so requested.

[9] While Perrigo appears to have added just one reference over the course of the litigation (from 45 references to 46 references), Perrigo did not provide final invalidity contentions for the Process Patents pursuant to the scheduling order.

The Honorable Sherry Fallon
March 8, 2018
Page 3

In addition, there are several asserted claims as to which the Defendants have not articulated a non-infringement position.[10] Indeed, Actavis has not articulated a non-infringement position for about a third of the asserted claims, and Perrigo has not articulated a non-infringement position for about two thirds of the asserted claims. If there is no dispute as to whether a Defendant infringes a claim, it follows that stipulating to infringement would narrow the issues in the case.

Because LEO has already reduced its claims voluntarily, the Defendants should now also shoulder their burden in narrowing the case. LEO thus proposes the following sequence:

- Within 7 days of the Court's order, Perrigo provides non-infringement contentions for the New Brown Patents, and each Defendant stipulates to infringement of any claim for which it has not provide a non-infringement position.

- Within 7 days of this previous deadline, LEO narrows its claims to no more than 40 claims per Defendant, should the Defendant refuse to stipulate to infringement; and to no more than 35 claims per Defendant if the Defendant stipulates to infringement for all claims for which they have provided no non-infringement position.[11]

- Within 7 days of LEO's claim narrowing, the Defendants (as a side, not by party for claims asserted against both parties) narrow their contentions to no more than 5 references per asserted claim, no more than 5 combinations per asserted claim, and no more than four § 112 arguments per asserted claim.

This protocol would distribute the burden of narrowing this case among all of the parties and would allow the parties to reduce the complexity and cost of expert discovery.

*Second*, to address the Court's request for a second round of case narrowing, LEO proposes the following sequence:

- Within 7 days after the close of expert discovery, LEO narrows its claims to no more than 20 claims per Defendant.

- Within 7 days LEO's claim narrowing, the Defendants (again, as a side, not by party for claims asserted against both parties) narrow their invalidity contentions

---

[10] On March 5, 2018, Actavis served amended responses to LEO's Interrogatory No. 4 to address the New Brown Patents; to date, Perrigo has provided no such response.

[11] LEO observes that any claim narrowing will be based on the non-infringement and invalidity positions asserted by Defendants as of March 5, 2018 (apart from the to-be-received non-infringement contentions by Perrigo as to the New Brown Patents). Were Defendants permitted to introduce new defenses (whether non-infringement or invalidity), LEO should likewise be permitted to modify its identification of asserted claims.

The Honorable Sherry Fallon
March 8, 2018
Page 4

>to no more than 3 references per asserted claim, no more than 3 combinations per asserted claim, and no more than 2 arguments under § 112 per asserted claim.

These limits are reasonable in light of the number of patents at issue in this litigation. *See, e.g.*, Ex. 1, *Thermo Fisher*, C.A. No. 17-600 (summarized above); Ex. 2, *Tessera, Inc. v. Broadcom Corp.*, C.A. No. 16-380-LPS-CJB (D. Del. Oct. 17, 2016 and Oct. 27, 2016) (Oral Orders) (ordering an initial reduction to 46 claims, a later reduction to no more than 24 claims, and a paired reduction of references to 12 references and 24 combinations per patent, in a case involving claims across seven asserted patents); Ex. 3, *Enzo Life Sci., Inc. v. Abbott*, Nos. 12-274-LPS and related cases (D. Del. Jan 22, 2015) (Oral Order) (reducing asserted claims in two stages in a two-patent case, first to 25 and then to 15, and reducing references to 12); Ex. 4 *Reefedge Networks v. Aruba Networks, Inc.*, No. 12-1042-LPS (D. Del. July 30, 2013) (Oral Order) (limiting the defendants to no more than six references per patent and 18 references total); *see also* Joint Status Report, 16-cv-333, D.I. 265 at 6–7 (observing that in previous decisions cited by the Defendants, claims were reduced significantly only after the completion of expert discovery and claim construction).

Defendants' proposal, as set forth in the parties' Joint Status Report, 16-cv-333, D.I. 265, is too restrictive. LEO has asserted seven patents against Actavis and nine patents against Perrigo. Defendants' proposal, that LEO ultimately assert only ten claims per defendant at trial, would limit LEO to little more than a single claim per patent. As the asserted patents contain claims directed to different aspects of the respective inventions, such a restriction would unduly prejudice LEO. *See In re Katz Interactive Call Processing Litigation,* 639 F.3d 1303, 1309–12 (Fed. Cir. 2011) (observing that due process considerations may permit a party leave to assert additional claims beyond what the Court orders upon a showing that those claims raised separate legal issues).

**Trial Location and Date**

In response to the Court's request for LEO's position on the location and date of trial, LEO states that it will be prepared to proceed with trial as scheduled in Nebraska, at Judge Bataillon's convenience.

Respectfully,

*/s/ Maryellen Noreika*

Maryellen Noreika (#3208)

MN/dlw
Enclosures
cc:   Clerk of Court (Via Hand Delivery; w/encl.)
      All Counsel of Record (Via Electronic Mail; w/ encl.)